Okay, we'll hear counsel in the first case, which is Lee v. Glunt. Mr. Goldberger, are you reserving? Yes. Okay, you've got that, Linda. He's got it. How many minutes, Mr. Goldberger? Two minutes, please. May it please the Court, my name is Peter Goldberger. It's my privilege this morning to represent Han Tak Lee, who is the petitioner below and is the appellant here. At counsel table with me, my associate Pamela Wilk and Marissa Blustein and Charlotte Haldeman-Whitmore, also a former clerk of this court, from the Pennsylvania Innocence Project. Han Tak Lee is a 77-year-old Korean-born, naturalized U.S. citizen who has been incarcerated for over 21 years on a sentence of life without parole for an arson involving the death of his own daughter. The issue that we're here principally to discuss is this. Is a person confined in violation of the Constitution of the United States, if his conviction depends entirely on expert opinion testimony that newly developed, post-appeal, uncontested scientific consensus holds to be entirely unreliable? We say that the continuing confinement of such a person deprives him of liberty without due process of law in two different ways. One is an application of the long-established due process principle that a deprivation of liberty cannot rest on fundamentally unreliable evidence. This principle of due process was first articulated by the Supreme Court in 1948 in Townsend v. Burke. It was reaffirmed in 1972 in the Tucker case. It's been applied by this court in any number of cases, many of them sentencing cases, such cases as Katzen and First and many others, and in many contexts. The concern I have, Mr. Goldberger, is that the state courts found that this evidence went solely to credibility. Yes. The Lentini Affidavit. And Pennsylvania, as I understand it, follows the Frye test for admissibility of expert opinions. And I didn't see anything that would suggest that the opinions that were given by the Commonwealth's experts in this case would not be admissible at the present time. I know that's implicit in your contention, but wouldn't the state courts have had to go further and say not only did it go to credibility, but it would have pre- that the state of the science now is that this testimony that was presented would not have been admissible? Because of that fundamental error. Please speak up because everybody, all lawyers who are talking, we listen to the disks. Yes. So we want to, and we'll get you on the disk if you speak into the mic. Go ahead. The fundamental error of misunderstanding this testimony, the new scientific evidence, as merely impeaching, a completely unreasonable interpretation of that evidence, prevented the state court by its own mistake from reaching the question that Your Honor raises about the Frye test or any other. If the evidence is merely impeaching, they would not logically even get to the question of that this, that the evidence offered 20 years ago would not pass the Frye test today, nor would it pass Daubert in federal court. Isn't that what you'd have to show though? Yes. That you'd have to show that? When you, as a matter of state law, you would. Yes. Of course, we're not here to discuss the state law question. But the same error prevented the court logically from reaching every issue that was presented, including the federal constitutional issues. But there wouldn't be a constitutional question raised by the fact that it may be inadmissible under Daubert, but would be admissible under Frye. That's true. All right. That's true. If it was properly admissible under Frye, but even then the federal court could ask if the issue was preserved and exhausted, as it was here by concession, whether this evidence was nevertheless fundamentally unreliable and therefore failed due process. The fact that evidence may be admissible under a rule of evidence does not prove that it's constitutional. Constitutionally permissible is certainly to support a conviction for murder and life sentence. This is a freestanding claim. And therefore, as far as I can tell, the Supreme Court has assumed without deciding that we can hear a freestanding actual innocence claim. Assuming. Yes. Without deciding. Is that the position? You don't really expect us to go someplace where the Supreme Court hasn't gone yet? I mean, you'd like it. Well, certainly. I do. And that's our second due process issue. But I started with the first one because it's easier and you don't have to go somewhere the Supreme Court hasn't gone to say that a conviction that rests on unreliable evidence violates due process. But a conviction that is also a due process violation, continuing due process violation, when it shocks the conscience. And what could be more shocking to the conscience, contrary to fundamental principles of due process and universal justice, than that the innocent may not go free? Well, this is not a death case, though. No. But the Supreme Court has never said that there is a different due process standard for death or imprisonment. And certainly life without parole is as close as you can get. Well, Justice Scalia has suggested that without actually holding it. The Court has never so held in a case like this. The Court? I'm not sure I understand. Which holding? All the cases have been death cases. No, that's not true. Osborne, in which the same principle was articulated by the Supreme Court in exactly the same terms and reserved in exactly the same terms, was not a death case. And I don't think it is really a basis on which our proposition could be distinguished to say, well, we may be right, but only in a capital case. Was this issue presented to the PCRA Court? The State has conceded that it was expressly in the first or second paragraph of their response to the habeas. I'm sorry. Then why shouldn't we defer to their ruling on this evidence? Well, you defer to the extent that Congress directs you to defer, which is pursuant to 2254D. And Congress says, if the Court, if the State Court, and it's not the PCRA Court really, but the Superior Court that we look to for this purpose, if the State Court has reached the merits of the federal question, then we defer unless their decision was unreasonable. If they have not reached the merits, we don't defer at all. We say that because of this mistaken decision about the federal issue. They didn't reach the federal issue. Correct. That's right. Because of the mistaken ruling on saying that the new science is merely impeaching, did not reach the merits of the federal issue. They thought that precluded all the issues in the case. That negated. That's not a misapplication of federal law then. No. We say it's not. But if it was, if this was the Superior Court's way of addressing all the issues, including the federal issue, then it certainly was unreasonable. It's unreasonable as a matter of fact and law to say that evidence which is of a scientific nature, that says where scientists say, and I'm not just some scientist with some theory, but every credible and competent scientist in the field says today that what we thought in our field 20 years ago was wrong. That's not a difference of opinion. That's science. This is the way science works. And you don't have, when the old opinion, so to speak, loses, and this gets back to Judge VanAskey's question, loses its consensus standing when it's no longer a credible, acceptable. That's our Albrecht opinion. Yes. Yes. And it's also. And I was on that panel. Yes. Judge Cowen wrote it. I noticed, yes. And that this very question, this very mistake about what's merely impeaching was addressed by this Court in the Keylace decision just a year ago in the context of Federal Rule 33. But the issue is the same about what do we mean by merely impeaching. Wasn't there other evidence, though, as to Lee's guilt? Not hardly. He had the accelerant on him. Nothing substantial. No. No. Well, you say no, but I'm sure the other side is going to say yes. There was evidence. There was insubstantial evidence. I mean, there's always going to be some other evidence. He was present. He was present at the scene. The jury convicted him. Yes. The jury convicted him. And the trial judge said in the post-trial opinion that the evidence was sufficient to convict only if the jury credited all of the Commonwealth's evidence, particularly citing the scientific evidence of the fire scene investigators, the state police. Part of the scientific evidence was the forensic pathologist's testimony that there had been some evidence of strangulation. What the forensic pathologist said was that the smoke deposits in the lungs and throat would be consistent either with conflagration or pressure on the throat. Never opined that there was strangulation. Opined that that piece of evidence would be consistent with strangulation or partial strangulation or with a flash fire, he said, a sudden fire. And that's what the scientific evidence now tells us is perfectly consistent with all the rest of the evidence. The record that disturbs me here is the failure of, even though the state agreed, the failure of the trial court to let your expert see evidence. Yes. What tied the hands of the expert in the state court where we offered the evidence was the unexplained, well, inexplicable, but not unexplained, decision of the trial judge to allow access to the remaining physical evidence. To deny access. Failure to allow it. The order denying it. That's right. And that prevented our expert from being able to opine whether the fire was accidental. He's too honest to say, I can say this evidence, that the fire was accidental without looking at the debris and the physical evidence. But the PCRA court denied initially that your discovery request without prejudice. Did you renew your discovery request? I don't. Here's what we did. What we did was we first tried to just send an investigator out to see if we could get access. That was not possible. We filed the motion with the judge. It was denied. And I have to say I don't recall that it was denied without prejudice. But when I appeared before the PCRA court with the affidavit ready for the hearing and the Commonwealth said we don't need a hearing, we don't have an expert, we don't want to cross-examine, we don't contest the affidavit, we are saying it's merely impeaching and that's our position. That was the end of it. If we were to send it back, is the evidence still available? Do you have any idea? I don't know the answer to that. It's been going on for 20 years. I've been in the case over 10 years. It was almost 10 years ago that we were denied the access. We'll have to ask the state. I would hope so. Our position is we could get relief. We can get relief on the merits because of the state's position refusing a hearing and accepting our affidavit, which they would have to. It's a nationally prominent expert, unfairly disparaged by the PCRA court, but a nationally prominent expert of unimpeachable integrity who said this no that there was a deliberately set fire. Let's go back to the evidence that we don't know whether it exists or not. If it doesn't exist, there might be spoliation, but we have to think about that. We shouldn't make that assumption. So if we were to reverse the failure to have an evidentiary hearing with the evidence, does that take care of what you really want? No, because my client is innocent, and he's been in prison 21 years, and he should be released. Well, we can't decide that he's innocent. But you could remand with directions to grant the writ on the present record because of the showing that we made and the positions that the Commonwealth has taken and the unreasonableness of the superior court opinion. You could remand with directions to grant the writ. At the very least, we're entitled to the hearing. Thank you. Thank you, Your Honor. Okay. May it please the Court. Good morning. Jeremy Bowles for the Commonwealth of Pennsylvania, Monroe County District Attorney's Office. Please talk clearer so we can understand it. Just to answer some of the questions you addressed. Does the evidence exist? I have asked that question of the district attorney, and I do not believe it still does. We have not actually checked with the Pennsylvania State Police. Why wouldn't it? I mean, they knew this man is in prison for life. Why would they have kept the evidence? I cannot answer that. But I have asked, like I said, the district attorney, and he has informed me that if this does come back, we are unable to try it because he does not believe the evidence exists. Does he know or he doesn't believe? He does not believe. We do not know for certain because we have not actually checked with the State Police. You haven't checked to see if it's there? I have not, and I don't believe he has either. One would have thought he would have, knowing this was coming up. And I have told him that, Your Honor. That's all I can say. And this has been in litigation continuously? For the five and a half years that I have been here, yes. And before that even, you know, it's always been contested? Yes. The acting district attorney was actually the trial counsel on the case, so he is intimately familiar with the case. However, he, again, does not believe the evidence still exists. Well, if you don't produce the evidence, shouldn't we presume that it's not favorable to you? Isn't that what the law says? I don't think we can go that far, Your Honor, because I don't think we have a rock-solid new evidence, new scientific basis for this. I think we have an expert opinion that is, as in the line with the thinking of the trial court, the superior court, and the district court, that this is merely credibility. We have an expert that even says in his affidavit towards the back end of it, and I believe it's paragraph 25, this obviously overstated precision calls into question the credibility, and it goes on of the commonwealth's three witnesses. It's a credibility argument. This is not a DNA argument, Your Honor, where we say with one in one trillion that this is actually the,  Well, there is scientific thought that the way in which arson used to be understood to happen isn't. I mean, I was on Albrecht, and we were very concerned in Albrecht, but we let it go because we didn't have as much as we have in this case. I don't know how you can tell us that. I mean, read the New York. There was an article in the New York Times quite a while ago on the new arson thinking. So there is new scientific evidence. I agree, Your Honor. I'm not trying to say there is absolutely no science involved. What I'm saying is it's not as definitive as, say, DNA. Even Mr. Lenthi's affidavit says the old science used by the commonwealth's experts was, quote, much less significant. That's not the same as saying it's misleading or false at this point in time, because ultimately what we have is evidence taken from a crime scene and scientifically evaluated, and then they use that to formulate their own opinion. So obviously every expert we have potentially could have a different opinion. Do you agree that if the conclusion was reached that the old science has been refuted, that there could be a freestanding claim of actual innocence brought under Section 2254? I think we would have to have, like you said previously to your appellant, that we would have to say this newfound scientific pattern is now accepted under FRI and therefore can go further by saying the old way was completely and utterly wrong and it is misleading and or false at this point in time. But I don't think we have that here. We have an evolution in science, but it's not definitive. What was the other evidence of guilt? Well, I believe it was you that hit on the fact that the accelerant that was admitted to being on the defendant's statement. It doesn't matter. The actual defendant testified at trial that he fell down and got a liquid on his pants that later turned out to be an accelerant. The defense counsel, who is now deceased, also testified at the PCRA hearing, I believe in 1993, that I had to go with that because that's what my defendant was telling me, that he went back in, he fell down, and got accelerant on his pants. He got a liquid on the pants that turned out to be accelerant. The defense counsel went on to testify that my only theory was that we originally thought this was an accident, but my expert would not come to that conclusion. And therefore, I was stuck with this argument because I had the accelerant. And their theory was that the victim was the one that put the accelerant into play. But in reality, we claim, obviously, that the defendant did it. But he still stuck with that because he had an expert at that time that reviewed all the Commonwealth evidence presented. And it's interesting, if you actually look at Mr. Lenthi's opinion, he goes on to say that some of the statements in his affidavit go, and I quote, absolutely no basis in science, nor is there a report anywhere in the literature. He was talking about Mr. Jones's basis of a 300-degree fire. And he makes numerous other references about the scientist Packwood saying he has lacked any scientific justification. One could conclude that the expert used by the defense at the time would at least pick up on that because there is no evolution in that. One aspect of Mr. Lenthi's argument was that what the Commonwealth argued would actually, the liquid defied the laws of gravity. Again, an expert at that time would pick up on that. Why is that significant? Because this is a credibility attack by a paid expert by the defense, wanting the court to overturn a case that was tried 20-plus years ago. We're not there. Based on new evidence. I'm sorry? Based on new scientific evidence. Again, that I feel that is not dispositive. It's not a certain DNA example that any science could look. We're going to have opinion based on scientific evidence. Is there, I didn't get the impression that there was a great deal of scientific evidence went in the other direction with respect to fire causation. Do you point us to that? Or is it just the old evidence? I'm not sure if I understand what you're. My question is, is there legitimate scientific evidence to rebut Mr. Lenthi's affidavit? I don't think we've ever got to that point. Well, don't you think we should? I mean, a man is in jail for the rest of his life. I understand that. However, I believe we're not there scientifically yet. I believe we have an evolution of science, but I don't think it's at the point where it's DNA, where it's dispositive of it, where it says without, by a preponderance of the evidence, this man is not the one that committed it because we've looked at this. But we're not there. But you left Mr. Lenthi's affidavit go unrebutted. Yes. It stands on its own. It's not contested. Shouldn't you have – how – mustn't we accept that, what he says? Not necessarily. You can look at it just as everybody would at trial. This is an opinion of an expert to be offered on its own. But there's no contrary expert evidence. I understand that. But we have never got to the point where we were offering an expert. Why, I cannot answer that. But we never have. Well, then the state hasn't proven its position. I mean, you're the state. You're the commonwealth. I understand that. And you didn't put in anything that would contradict Mr. Lenthi. In fact, isn't this a case where you have a three-page argument? Yes, Your Honor. I apologize for the shortness of it. Three-page argument? I apologize for the shortness of it. I mean, do you have any idea what we get in this court in terms of – Mr. Goldberger, he's usually responsible for a lot of those pages. I've seen that at the Superior Court level, Your Honor, and at the Middle District Court. But as my brief may be three pages, we can still look to the record of the Middle District and the Superior Court that both said, and in line with the trial court, that both said this is just a credibility argument. This is not definitive just because we have an expert's opinion on that. And it's interesting if you – and I was thinking about this this morning on the drive down here. If we do have an evolution in science and we have this person that comes out and says this is all wrong, then why not just state that? Why not just state it in the affidavit and say that – Whose affidavit are you talking about? Mr. Lenthi's affidavit should just state that the science has now evolved to the point where the previous science used is erroneous. But he goes beyond that by attacking the credibility in numerous aspects of that, and they're outlined in the Superior Court opinion. But you put nothing in. The State put absolutely no evidence in. I understand that, Your Honor. There's nothing I can say to worry about that. I cannot refute a negative. This cannot. But again, I don't think the science at this point is dispositive. I think it's just an evolution, but it doesn't discredit the previous science used. You concede that the State courts didn't adjudicate Lee's federal actual innocence claim on the merits? I don't believe there's a constitutional violation, so therefore all we have is a mere actual innocence claim. So I don't think we get there. And I believe the Superior Court and the trial court through the PCR edition was dealing with the science and why the error of the trial court failed to produce or put on his own arson expert. We did cover that. But again, that goes back to what you said, Your Honor, that we did not put forth any expert testimony to refute Mr. Lenthi's affidavit. But again, we don't even know if the evidence exists at this point and able to do that. You didn't look for it. I don't know if my boss did or not, basically. That's what I'll come down to because I don't have that power. I can't understand why the State wouldn't have put out a lot of effort to try to find— you knew this case was coming before this court. Yeah, sure. Why you wouldn't have sent somebody out to really make a good look for it? I cannot answer that, Your Honor. I don't know. All I was told when I asked about this being remanded was that we cannot try this case because it is over 20 years old, and I'm not sure if the evidence still exists. In the Supreme Court in 2009 in a case called In Re Davis, had an original habeas corpus petition filed with it. It sent it back to the district court to conduct a hearing on the question of actual innocence. Isn't that where we're at right now? Shouldn't we send this back to the district court to conduct a hearing on this actual innocence claim? I don't think we are. Because, again, we do not have enough science to say the old science is no good. Well, Justice Scalia descended in that and said he didn't think there was any chance that the petitioner would win, but still at least the petitioner got a hearing on his actual innocence claim. Maybe, but if there was an actual constitutional violation, I may concede that. But, again, I don't think we have a due process violation here because I do not believe we have entirely new evidence that discredits the old evidence. You haven't tried. You haven't put anything in. Again, Your Honor, I still rely on the fact that this is a credibility attack on the prior arguments, that we have an evolution. But if we think it's an evidentiary attack, attack on the quantum of evidence, you haven't put anything in. I can't understand the State's position. Again, Your Honor, all I can say is that we still feel this is a credibility attack. We cannot go back and, therefore, re-evaluate evidence that we do not know exists. Because you haven't looked. I understand that, Your Honor. But, again, we cannot re-go, re-do it. And, again, this ultimately comes down to a defendant. But can't you try the question of whether or not the science has changed so much that the original testimony would not have been admissible? Can't that be tried? Wouldn't that be the issue the district court would have to address? I think that's my point. I don't think we're at that point. So we don't require a hearing. If we were at the point where we can say that it's accepted scientifically that not only this is new evidence, but it clearly disproves the old evidence, saying the old evidence is now misleading, then we're there. Then we have a due process violation. Now we have the actual claim of innocence, and then we should conduct a hearing because there potentially could be an innocent man in jail. But we're not there yet. That's our position. And that's all I have, Your Honor, unless there's any other questions. Thank you. Ginsburg. Thank you very much. Mr. Goldberger, you have two minutes. Thank you very much, Your Honor. Let me start by correcting a few small points. First, Ms. Wilk, as she always does, corrects me. We did ask for reconsideration. Judge Vinesky, of the denial of discovery, it's page 104 of volume 2 of the appendix. Mr. Lentini's affidavit does not suggest that the testimony of the witnesses at trial would be viewed today as much less significant, as my friend Mr. Ballas suggests. Rather, what he said in paragraph 30, the conclusion of his 41-page affidavit, is this. Using today's standards, there is no credible evidence that would lead a competent investigator to conclude that the fire was intentionally set. It's unequivocal. Yes, in passing, in his 40-page affidavit, he pointed out a few places where he also thought the testimony at trial was wrong or not credible under then-existing standards. We did not rely on those passages in the affidavit in any measure in support of either of our due process claims. The expert, because he is a scientist, felt compelled to say that because it was part of his opinion. But it's not the basis of this case. The basis of the case is there is no credible evidence by today's standards that any expert would say what those people said at the trial. Nor did anyone say there was accelerant on Mr. Lee's clothes. It was a liquid. It was a liquid which was consistent with a hydrocarbon spectrum reading that would be consistent with an accelerant. But as Mr. Lentini points out, it's consistent with any number of other hydrocarbons, including what happens when a roof is subjected to a fire and the roofing material starts to melt down into the room. There was water all over the floor because Mr. Lee's daughter was mentally ill and had a water obsession and had left the water running and flooded the bathroom. So the floor, yes, there was liquid on the floor. Yes, there was hydrocarbon in the room because this is what happens during a fire. But no one said accelerant. If you remand, if I may just conclude, if you remand for a hearing, and I don't think it's necessary because the Commonwealth declined their opportunity to offer evidence on September 6, 2005, when we stood in front of the PCRA court. I stood there. Mr. Polis's predecessor stood there. And they said, we don't have an expert. We don't even want to cross-examine Mr. Lentini. This is just impeachment. That's just not right. And that was the time. Congress says the fact-finding is to be in state court. We offered to find the facts in state court more than five years ago. Thank you. And that's done. Your red light's on. Thank you. Thank you.